ALICE M. BATCHELDER, Chief Judge,
concurring.
I concur in the judgment because we are bound by precedent, as the lead opinion makes clear. Lead Op. at 2, 8, citing Brown v. Cassens Transp. Co., 675 F.3d 946 (6th Cir.2012). Specifically, we are bound by a holding that says parties to a state worker’s compensation program are subject to federal eivil-RICO liability — to each other — because a civil-RICO plaintiff can: (1) demonstrate “mail or wire fraud” without ever showing any actual fraud, id. at 954 (discussing mail fraud as the “predicate offense” but omitting any suggestion that anyone was ever deceived by any alleged misrepresentations);[1] (2) demonstrate injury to “business or property” by alleging only personal injuries, id. at 965 (“When a plaintiffs personal injury is filtered through the WDCA, it is converted into a property right.”); and (3) demonstrate actual damages without showing an entitlement to any benefits, id. at 966 (“even if a [worker’s compensation claimant] cannot ultimately satisfy the criteria to receive [benefits]”). So, I must accept the outcome of today’s decision, but I cannot agree that it is correct. In fact, I do not agree that civil RICO was intended for situations such as this — that is, I do not agree that Congress enacted civil RICO so that adversarial parties to a formal program of mutual and reciprocal sacrifices and benefits could subsequently repudiate their sacrifices and exact additional benefits.
In general, worker’s compensation programs are a “social trade-off’ in which employees give up the right to litigate workplace injuries in exchange for no-fault insurance coverage while employers provide no-fault coverage to avoid the risks and costs of litigation. See generally Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 662-63, 126 S.Ct. 2105, 165 L.Ed.2d 110 (2006). Under Michigan’s Worker’s Disability Compensation Act (WDCA), employees who suffer workplace injuries “shall be paid compensation,” Mich. Comp. Laws § 418.301(1) (emphasis added), and, in exchange, they *486 submit to the WDCA as “the employee’s exclusive remedy,” id. § 418.131(1) (emphasis added).
In this ease, the employees want the benefit (i.e., the no fault compensation) but not the bargain (i.e., proceeding exclusively under the WDCA program). That is, they do not want to proceed exclusively under the WDCA because, they contend, the employer, the employer’s claims manager, and the claims manager’s handpicked doctor are conspiring to deprive them of a fair hearing under the WDCA by having the doctor submit false medical opinions. Rather than proceed through the WDCA program,[2] these employees sought recourse in federal court, under RICO.
This idea of filing a civil RICO lawsuit against the opposing party to a worker’s compensation dispute is not new; it dates back to at least 1991, see Daniel Fitzpatrick, Civil RICO and Antitrust Law: the Uneven Playing Field of the Workers’ Compensation Fraud Game, 25 Pac. L.J. 311, 335 (1994), when Zenith Insurance began to file such suits as an “anti-fraud tactic” against “worker’s comp mills.” The claim then was virtually a mirror image'of the claim here:
Unscrupulous lawyers often combine with medical clinics in what are known as ‘workers’ comp mills, where runners and cappers are hired to recruit workers outside of factories or state employment offices and refer them to the lawyers, who assist the workers in' filing claims for compensation. The lawyer then sends these workers to doctors or psychologists who perpetuate the scheme by performing costly evaluations to justify the claims.
Id. at 323 (footnotes omitted). I suppose we may be entering an era when both sides to the worker’s compensation dispute sue each other under RICO, with the winner prevailing on the worker’s compensation dispute and obtaining RICO damages as well. I do not agree that Congress enacted RICO for this purpose and I think that the limitations on RICO claims — limitations that the lead opinion and the Brown precedent have painstakingly removed — -were included to prevent this.
I believe that to show fraud under RICO, a plaintiff must actually allege and demonstrate some type of fraud — that is, “a RICO plaintiff alleging injury by reason of a pattern of mail fraud must establish at least third-party reliance,” Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 659, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), with the applicable third party in a worker’s compensation dispute being the decision-makers. In fact, since this is an adversarial proceeding with multiple tiers of review, the plaintiff must be able to allege and show misrepresentation to, and reliance by, every decision-maker along the way: the WDCA mediator or magistrate, § 418.847; the Workers Compensation Appellate Commission, § 418.859a; and the state appellate and supreme courts, § 418.861a(14). Without some type of mis *487 representation and reliance, there is simply no fraud. Bridge, 553 U.S. at 658-59, 128 S.Ct. 2131.[3]
Moreover, I believe that an employee’s workplace injury cannot satisfy the RICO requirement that the injury be to “business or property.” A workplace injury may warrant compensation under the worker’s compensation scheme, but a reduction in that compensation is not an independent injury to business or property. This is explained fully in the excellent analysis provided by Judge Gibbons in her dissent from the Brown precedent, see Brown, 675 F.3d at 969-74 (Gibbons, J., dissenting), and Judge Borman in his analysis of this issue in the underlying Brown decision, see Brown v. Cassens Transp. Co., 743 F.Supp.2d 651, 671-74 (E.D.Mich.2010).
And I believe that the plaintiff must show that he or she is actually entitled to benefits in order to assert any legitimate claim of damages. Again, Judge Borman in the underlying Brown case, Brown 743 F.Supp.2d at 674-76, and Judge Edmunds in the present case, Jackson v. Sedgwick Claims Mgmt. Servs., Inc., No. 09-11529, 2010 WL 931864, *20-22 (E.D.Mich. Mar. 11, 2010), have thoroughly and correctly analyzed this issue, particularly given that it would fall on them to particularize these presumed damages. I will merely note my additional disagreement with two aspects of the Brown precedent. First, I do not agree that claims of misrepresentation by an opposing party in an adversarial proceeding equate to a claim of legal malpractice by one’s own attorney. See Brown, 675 F.3d at 966. In the legal-malpractice situation, the attorney’s malpractice denies the client the opportunity to fully present her claim in the adversarial proceeding. In the present case, however, the client (and her attorney) get the full benefit of the adversarial proceeding — to the extent that the employer’s doctor’s medical report was untrue, the employee could provide her own doctors’ competing report(s), she could testify that the employer’s report was untrue, her attorney could challenge the employer’s report, the employer’s doctor, and the employer himself. In this situation, an employee who settled or lost has already had the full benefit of an adversarial proceeding (with multiple tiers of review); she is not entitled to another “suit within a suit.”
Similarly, I do not agree with the insinuation that settling the claim necessarily demonstrates that the employee was entitled to at least some benefits, or that the settlement value is the starting point for how much she “would have” received. See Brown, 675 F.3d at 966-67. Parties settle for all manner of reasons. I do not agree that settlement is evidence that the claims were valid.
Thus, abiding by our precedent in Brown, I concur in the judgment in this case, though I disagree with the reasoning of that precedent and its application here.

. The precedent opinion, Brown, 675 F.3d at 952, cites Bridge v. Phoenix Bond & Indemnity Co., 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012, (2008), for the assertion "thát civil RICO plaintiffs do not need to demonstrate reliance on defendants’ fraudulent representations,” and refers to the earlier opinion, Brown v. Cassens Transp. Co., 546 F.3d 347, 356-57 (6th Cir.2008), which analyzed that issue. To be sure, Bridge holds that first-party reliance is not required, id. at 650-54, 128 S.Ct. 2131, but it also goes on to say that "the plaintiff’s loss must be a foreseeable result of someone’s reliance on the misrepresentation,” id. at 656, 128 S.Ct. 2131 (emphasis in the original); see also 658-59, 128 S.Ct. 2131 ("[N]one of this is to say that a RICO plaintiff who alleges injury 'by reason of’ a pattern of mail fraud can prevail without showing that someone relied on the defendant’s misrepresentations.” (emphasis in the original)). Neither of the Brown opinions points to any reliance by anyone or suggests that any showing- of any reliance was ever required.
In the present case, the district court declined to reach the merits of the defendants’ argument “that Plaintiffs' [sic] have failed to plead mail fraud, as Plaintiffs have not demonstrated that anyone was 'deceived' by Defendants [sic] actions.” Jackson v. Sedgwick Claims Mgmt. Servs., Inc., No. 09-11529, 2010 WL 931864, * 14 n. 27 (E.D.Mich. Mar. 11, 2010). The lead opinion here offers no indication that anyone was actually deceived by any misrepresentations, but declined to reach this argument and "will leave it to the district court to consider on remand.” Lead Op. at 20.

. The WDCA provides for review of a disputed claim by a mediator or at a hearing before a worker's compensation magistrate, Mich. Comp. Laws § 418.847; provides for review of the magistrate's decision by the Workers Compensation Appellate Commission, § 418.859a; and provides for subsequent judicial review, § 418.861 a( 14).
The WDCA provides that a disability insurer must pay a penalty of $50.00 per day if, in the absence of a dispute over the claim, it fails to pay benefits within 30 days, though it limits the total penalty to $1500. § 418.801(2). The WDCA also provides that a self-insurer can lose its privilege if it "repeatedly or unreasonably fails to pay promptly claims for compensation for which it shall become liable." § 418.631(1).

. The Supreme Court held in Bridge that first-party reliance was not required to prove causation under the mail-fraud statute, but clarified that some reliance would be necessary to show causation:
Of course, none of this [explanation that first-party reliance is unnecessary] is to say that a RICO plaintiff who alleges injury ‘by reason of a pattern of mail fraud can prevail without showing that someone relied on the defendant’s misrepresentations. In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.... In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause.
Bridge, 553 U.S. at 658-59, 128 S.Ct. 2131 (emphasis in original; internal citation omitted).